UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STEVEN CASTELLO,<br><br>                    Plaintiff,<br><br>          v.<br><br>CITY OF SEATTLE, et al.,<br><br>                    Defendants. | CASE NO. C10-1457MJP<br><br>ORDER ON SPECIAL MOTION TO STRIKE PURSUANT TO WASHINGTON ANTI-SLAPP ACT & FRCP 12(C) MOTION TO DISMISS |

The above-entitled Court, having received and reviewed

1. Defendants Shea and Simmons's Special Motion to Strike Pursuant to the

   Washington Act Limiting Strategic Lawsuits Against Public Participation (Anti-

   SLAPP Act) & Fed. R. Civ. P. 12(c) Motion to Dismiss (Dkt. No. 11)

2. Plaintiff's Response to Special Motion to Strike and Motion to Dismiss (Dkt. No. 19)

3. Defendants Shea and Simmons's Reply in Support of Special Motion to Strike and

   Motion to Dismiss (Dkt. No. 23)

and all attached declarations and exhibits, makes the following ruling:

1   IT IS ORDERED that Plaintiff's claims against Defendants Shea and Simmons for

2   defamation, defamation by implication and false light are STRICKEN pursuant to RCW

3   4.24.525 (the Washington Anti-SLAPP statute).

4   IT IS FURTHER ORDERED, pursuant to RCW 4.24.525(6)(a), that Defendants Shea

5   and Simmons are each awarded their costs of litigation and reasonable attorneys' fees incurred in

6   connection with this motion and additionally are awarded the mandatory statutory penalty of

7   $10,000 each.  Defendants' counsel shall submit their requests for costs and reasonable

8   attorneys' fees within 7 days of this order; Plaintiff shall submit any response to those requests

9   within 7 days of the filing of the requests.

10   IT IS FURTHER ORDERED that, pursuant to Plaintiff's motion at oral argument, the

11   claim for wrongful interference with business expectancy is DISMISSED with prejudice.

12   IT IS FURTHER ORDERED that Defendants' FRCP 12(c) motion for judgment on the

13   pleadings is GRANTED for the civil harassment claim; the Court further finds that leave to

14   amend would be futile and orders this claim DISMISSED with prejudice.  The Court notes that

15   Plaintiff's defamation claims are subject to dismissal under FRCP 12(c) for their lack of

16   specificity, and that amendment of the complaint would be futile based on the Court's decision to

17   strike those claims pursuant to RCW 4.24.525.

18   **Background**

19   Plaintiff Castello and Defendants Shea and Simmons (Defendants) are all employed as

20   paramedic/firefighters for the Seattle Fire Department (SFD).  Defendants are among the parties

21   named in a state court lawsuit initiated by Plaintiff which was removed to federal court (on

22   federal question grounds) in October 2010.  The causes of action alleged against Defendants

23

24

ORDER ON SPECIAL MOTION TO STRIKE
PURSUANT TO WASHINGTON ANTI-SLAPP
ACT & FRCP 12(C) MOTION TO DISMISS- 2

1   include claims for defamation, defamation by implication, false light, civil harassment and

2   wrongful interference with business expectancy[1].  Complaint ¶¶ 10.3, 11.7, 12.7.

3          According to the parties' briefing, the origins of this litigation stretch back to August

4   2008, when Defendants submitted a written complaint to Deputy Chief Duggins communicating

5   their concerns about a letter Plaintiff had circulated in the workplace.  Simmons Decl., Ex. B.

6   The complaint was investigated and resulted in an Official Reprimand for disorderly conduct

7   against Plaintiff in November 2008.  Id., Ex. D, p. 2.  Further activity by Plaintiff (the mailing of

8   a survey to the homes of his co-workers, including Defendants) resulted in the submission of

9   another written complaint by Defendant Simmons (Id., Ex. E) and a phone call by Defendant

10  Shea to the Fire Chief (Shea Decl., ¶ 6).  When Plaintiff continued to solicit co-workers

11  regarding the survey despite being ordered by the Chief to desist (see Simmons Decl., Ex. N, p.

12  1), Defendant Simmons filed an e-mail complaint with her superiors (Id., Ex. F) and Defendant

13  Shea communicated her concern to the Deputy Chief (Shea Decl., ¶ 7).  These complaints were

14  investigated by the City of Seattle Equal Employment Opportunity Office, which concluded in

15  separate reports that, while Plaintiff's actions did not constitute harassment or retaliation

16  (Simmons Decl., Ex. D), they did constitute misconduct.  Id., Ex. N.  No disciplinary action was

17  taken concerning Plaintiff in the wake of these reports.  Simmons Decl.,  ¶ 11.

18         In June 2009, Defendant Shea sent an e-mail to the Deputy Chief outlining her concerns

19  for her personal safety and the morale of the battalion based on her observations of Plaintiff's

20  behavior.  Shea Decl., Ex. B.  The Deputy Chief, citing reports of "harassment" and "disruption"

21  regarding Plaintiff, communicated his concerns to the Chief several days later.  Simmons Decl.,

22  Ex. H.  The following day Defendant Simmons submitted an "Urgent Safety Complaint"

23  ────────────────

24      [1]   The wrongful interference claim was orally dismissed with prejudice by Plaintiff's counsel at the
    hearing on this motion.

ORDER ON SPECIAL MOTION TO STRIKE
PURSUANT TO WASHINGTON ANTI-SLAPP
ACT & FRCP 12(C) MOTION TO DISMISS- 3

1  concerning Plaintiff to the Deputy Chief.  Id., ¶¶ 16-17.  The Chief responded by agreeing to

2  investigate the Safety Complaint (Id., Ex. I) and placing Plaintiff on paid administrative leave

3  pending a fit-for-duty evaluation.  Id., Ex. L, p. 5.  The following month, Plaintiff was declared

4  to be psychiatrically fit for duty; Luhn Decl., Ex. 3.

5         On June 17, 2009, the day after Plaintiff was placed on administrative leave, he appeared

6  at his workplace.  Despite being informed that he was restricted from entering the work

7  environment, Plaintiff remained onsite and the situation escalated to the point where the police

8  were contacted.  Simmons Decl. Ex. L, ¶¶ 25-28.  These events (which were later incorporated

9  into Defendant Simmons's Urgent Safety Complaint; Simmons Decl., ¶ 20) culminated in a

10  disciplinary action against Plaintiff which he appealed to the City of Seattle Public Safety

11  Commission (PSCSC).  Following a hearing on the appeal, the PSCSC issued its decision

12  upholding the disciplinary action (and referring to Plaintiff's behavior as "unacceptable, totally

13  inappropriate, insubordinate" and "inexcusable;" Simmons Decl., Ex. L, ¶¶ 68-69).  In the

14  meantime, the investigation into the Urgent Safety Complaint concluded with a December 2009

15  report which substantiated the factual allegations made by Defendant Simmons, but (with the

16  exception of the June 17 workplace incident) did not find that Plaintiff's actions constituted any

17  violations of the Seattle Municipal Code.  Id., Ex. K.

18         The following year, a local television news program (KOMO News) began looking into

19  issues of unrest and low morale throughout SFD.  A number of SFD workers, including

20  Defendants, were interviewed.  The investigation culminated in the broadcast of a story entitled

21  "Whistle blowers fear Seattle Fire Department in trouble."   A transcript of the broadcast was

22  included as an exhibit to Defendants' briefing.  Simmons Decl., Ex. M.  Although the focus of

23  the story concerned allegations about the SFD Chief, mention was made of the complaints

24

ORDER ON SPECIAL MOTION TO STRIKE
PURSUANT TO WASHINGTON ANTI-SLAPP
ACT & FRCP 12(C) MOTION TO DISMISS- 4

regarding Plaintiff and the June 17 incident and portions of the Shea and Simmons interviews were played.  Notably, Plaintiff was never mentioned by name in the broadcast.  Id.

In August 2010, Plaintiff commenced this lawsuit.  The portions targeting Defendants allude to two categories of communications: (1) their complaints to the investigators and command personnel of SFD and (2) their statements to KOMO News.  It is Plaintiff's allegation that Defendants' speech in these circumstances constituted harassment (Complaint, ¶ 10.3), as well as defamation, defamation by implication and false light (Id., ¶ 11.7).  Defendants have brought a dual-purpose motion, requesting that the claims against them be stricken in accordance with RCW 4.24.525 (the Washington Anti-SLAPP statute) and seeking judgment on the pleadings pursuant to FRCP 12(c).

**Discussion**

RCW 4.24.510 and 4.24.525 (Anti-SLAPP Statutes)

For many years, Washington has had in effect a statute intended to curb strategic lawsuits against public participation; i.e., lawsuits which are targeted at communication intended to influence government action.  This "Anti-SLAPP" statute had a fairly specific focus:

> A person who communicates a complaint or information to any branch or agency of federal, state or local government . . . is immune from civil liability for claims based upon the communication to the agency or organization regarding any matter reasonably of concern to that agency or organization.

RCW 4.24.510.

In 2010, the Washington legislature enacted another Anti-SLAPP statute that not only broadened the scope of protected communication, but created a procedural device to swiftly curtail any litigation found to be targeted at persons lawfully communicating on matters of public or governmental concern.  The types of speech protected by this wider-ranging version of the Anti-SLAPP were expanded into five categories:

a) Any oral statement made, or written statement or other document submitted, in a legislative, executive, or judicial proceeding or other governmental proceeding authorized by law;

b) Any oral statement made, or written statement or other document submitted, in connection with an issue under consideration or review by a legislative, executive, or judicial proceeding or other governmental proceeding authorized by law;

c) Any oral statement made, or written statement or other document submitted, that is reasonably likely to encourage or to enlist public participation in an effort to effect consideration or review of an issue in a legislative, executive, or judicial proceedings or other governmental proceeding authorized by law;

d) Any oral statement made, or written statement or other document submitted, in a place open to the public or a public forum in connection with an issue of public concern; or

e) Any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public concern, or in furtherance of the exercise of the constitutional right of petition.

RCW 4.24.525(2).  An activity qualifying under any of these categories is, by statutory definition, "an action involving public participation and petition" protected by this law.  Id.

Additionally, the newer Anti-SLAPP statute created a right to bring a "special motion to strike any claim that is based on an action involving public participation and petition," an expedited procedure intended to expeditiously cut off any litigation found to be targeting this protected activity.  RCW 4.24.525(4)(b).  This provision assigns a moving party the initial burden of demonstrating by a preponderance of the evidence that the claim or claims concern an action involving public participation and petition.  Id.  Once that burden is met, the burden shifts to the Plaintiff to establish by clear and convincing evidence a probability of proving the claim or claims. Id.  The statute permits a court to consider not only the pleadings, but supporting and opposing affidavits stating the facts on which the liability or defense is based.  RCW 4.24.525(4)(c).

1    Both the older and the more recent anti-SLAPP statutes[2] provide that a moving party who

2    prevails is entitled to a mandatory award of costs and reasonable attorney fees and a further

3    mandatory penalty of $10,000.  RCW 4.24.525(6)(a); RCW 4.24.510.  (RCW 4.24.510

4    conditions this on a finding of "good faith" on the part of the moving party, a requirement which

5    is absent from RCW 4.24.525.)  The newer statute expands the fee and penalty awards to include

6    a prevailing plaintiff if the court finds the motion to strike was frivolous or dilatory.  RCW

7    4.24.525(6)(b).

8         *Defendants' Statements*

9    Based on Plaintiff's voluntary dismissal of his wrongful interference claim and the

10   Court's finding that there is no general civil harassment claim in Washington law, the special

11   motion to strike claims will be addressed to the causes of action sounding in defamation.  As

12   mentioned *supra*, Plaintiff's defamation claims fall into two general categories: (1) Defendants'

13   statements to SFD investigators, co-workers and command personnel; and (2) Defendants'

14   statements to KOMO News which were aired in the broadcast.  The Court first analyzes whether

15   Defendants have carried their burden of establishing by a preponderance of the evidence that

16   these two categories of communications occurred in the course of "an action involving public

17   participation and petition."

18   Turning to the first category of statements, RCW 4.24.525 defines "governmental

19   proceeding authorized by law" as a proceeding conducted by any agency or other entity created

20   by local statute or rule that has been delegated authority by a local government agency and is

21   subject to oversight by the delegating agency.  RCW 4.24.525(1)(d).  The Court finds that SFD is

22   an "agency" of the City of Seattle (Complaint, ¶ 3.2) and, having been established by Article X

23

24   [2]  The Court notes that there is nothing in the language of RCW 4.24.525 to indicate that it supersedes RCW 4.24.510; the later statute is supplementary.

1   of the City of Seattle Charter, is likewise an "entity" created by local statute or rule.  Section 2 of

2   that charter empowers the Mayor to appoint the Fire Chief and Section 3 delegates the authority

3   to manage SFD to the Chief.  Seattle Municipal Code (SMC) Chapter 3.16 delegates further

4   authority from the Seattle City Council to SFD.  The Fire Department is thus an agency or entity

5   created by local statute or rule that has been delegated authority by a local government agency

6   and is subject to oversight by the delegating entity.

7          The only issue remaining on this aspect of Defendants' proof is the question of whether

8   Defendants' statements were made either "in" a governmental proceeding or "in connection with

9   an issue under consideration or review in such a proceeding."  RCW 4.24.525 is of such recent

10  vintage that there have been few cases construing it in the months since it was enacted.  The

11  parties, in fact, cite only one, a case out of this district entitled <u>Aronson v. Dog Eat Dog Films,</u>

12  <u>Inc.</u>, --- F. Supp. 2d ---, 2010 WL 3489590 (W.D.Wash. 2010).  <u>Aronson</u> cites extensively to

13  California precedent on the grounds that the California Anti-SLAPP Act (Cal.Civ.Pro. § 425.16)

14  mirrors Washington's new statute.  <u>Id.</u> at *3.  This Court likewise looks to California precedent

15  as persuasive authority concerning the new Anti-SLAPP statute.

16         Defendants' statements within the Department were made in two contexts: allegations of

17  misconduct which lead to departmental investigations and statements related to disciplinary

18  proceedings.  California courts have deemed investigations of misconduct by public agencies to

19  be "proceedings" within the meaning of the Anti-SLAPP statute.  The California Court of

20  Appeals has held that statements made by co-workers pursuant to an internal investigation of

21  misconduct concerned "an official proceeding authorized by law" and thus constituted

22  communications "in connection with" that proceeding.  <u>Hansen v. Cal. Dep't of Corrections and</u>

23  <u>Rehab.</u>, 171 Cal.App.4th 1537, 1541 (Cal.Ct.App. 2008).  Furthermore, "communications

24

ORDER ON SPECIAL MOTION TO STRIKE
PURSUANT TO WASHINGTON ANTI-SLAPP
ACT & FRCP 12(C) MOTION TO DISMISS- 8

1    preparatory to or in anticipation of the bringing of an official proceeding" likewise fell within the

2    protections of the California Anti-SLAPP Act.  Id. at 1547.  Defendants' statements in 2008 thus

3    qualify as statements in connection with a proceeding because they resulted in the Deputy

4    Chief's investigation of Plaintiff and ultimately to disciplinary action.

5        The Court has no difficulty in finding that the disciplinary proceedings (including the

6    investigation of allegations, the presentation of charges, pre-disciplinary meetings and the

7    appeals process) conducted by SFD and the City of Seattle Public Safety Civil Service

8    Commission (PSCSC) constitute "proceedings" within the purview of the RCW 4.24.525.  The

9    PSCSC, which heard Plaintiff's appeal from his departmental disciplinary review, embodies the

10   Washington legislative mandate of a civil service system of personnel management for city

11   firefighters.  RCW 41.08.  The department's disciplinary regulations, the firefighters' right to

12   appeal to the PSCSC and the judicial review accorded that appeal process all qualify as

13   "governmental proceedings authorized by law," and Defendants' statements (including the

14   Urgent Safety Complaint) in June 2009 which lead to an investigation, a fit-for-duty evaluation,

15   administrative leave and ultimately disciplinary sanctions against Plaintiff also qualify as actions

16   involving public participation and petition.[3]

17       Finally, in regard to communications made by Defendants within the Department, the

18   Court notes that all such communications fall within the general "catch all" provision of RCW

19   4.24.525(2)(e) as "lawful conduct in furtherance of the exercise of the constitutional right of free

20   _____

21       [3]  Plaintiff attempted, during briefing and oral argument, to create an issue out of his belief that
     Defendants, far from being motivated by a concern for public safety or departmental integrity, were solely interested
22   in achieving his termination from SFD.  The Court notes, first of all, that termination is a possible (although not
     inevitable) outcome of the kinds of concerns that were being investigated by SFD in regard to Plaintiff.  Secondly, if
23   the issues raised by Defendants (for whatever reason) were also issues of concern to the Department as a whole
     (which turned out to be the case), Defendants' motivation for communicating those concerns to the Department is
24   irrelevant.  Plaintiff has cited no authority that a speaker's motivation can render an otherwise non-defamatory
     statement actionable.

1  speech in connection with an issue of public concern."  Plaintiff's counsel made much at oral

2  argument of the fact that at least one of the e-mail communications by Defendants were copied to

3  a co-worker who was not in a management role or connected with disciplinary proceedings

4  within the unit.  The Court is of the opinion that the emotional and psychological stability of an

5  emergency medical worker is "an issue of public concern," and the fact that one or more of

6  Defendants' communications were directed to an individual who was not "up the ladder" in the

7  SFD chain of command will not disqualify those statements from protection under the Anti-

8  SLAPP statute.  RCW 4.24.525(2)(e).

9          Turning to Defendants' statements to KOMO News, the Court finds that a major

10  television network's local news broadcast constitutes a "public forum" within the meaning of

11  4.24.525(2)(d).  Support for this position can be found in California courts which have addressed

12  similar issues.  See Nyard, Inc. v. Uusi-Kerttula, 159 Cal.App.4th 1027, 1038-39 (Cal.App. 2

13  Dist., 2008); Annette F. v. Sharon S., 119 Cal.App.4th 1146, 1161 (Cal.App. 4 Dist., 2004)

14  ("[A] news publication is a 'public forum' within the meaning of the anti-SLAPP statute if it is a

15  vehicle for discussion of public issues and it is distributed to a large and interested community.")

16  Although the California cases concerned print media (magazines and newspapers), the Court

17  sees no meaningful distinction between print and broadcast journalism in the context of this

18  statutory scheme.

19          As previously found, the question of a paramedic's emotional and psychological stability

20  is "an issue of public concern" and Defendants' statements to KOMO News were thus made '"in

21  connection' with an issue of public interest that potentially affected a large number of [people]

22  beyond the direct participants."  Annette F., 119 Cal.App.4th at 1161.

23

24

1    And again, as in their statements to the Department, the Court finds that Defendants'

2 communications to KOMO News also fall within the definition of RCW 4.24.525(2)(e) as "the

3 exercise of the constitutional right of free speech in connection with an issue of public concern."

4 In the case of the television news broadcast, that "issue of public concern" went beyond

5 Defendants' personal concerns about Plaintiff's return to his paramedic duties to the issue which

6 was the true focus of the news story: the responsiveness of the SFD Fire Chief to the problems,

7 concerns and morale issues within his department.

8    The Court finds that all of the statements identified as potentially being the basis for

9 Plaintiff's allegations of defamation against these Defendants have been shown by a

10 preponderance of the evidence to fall under the protection of RCW 4.24.525 as "action[s]

11 involving public participation and petition" defined in the Anti-SLAPP statute.  That finding

12 shifts the burden to Plaintiff to demonstrate, by "clear and convincing evidence," a probability of

13 prevailing on his claims against these parties.  RCW 4.24.525(4)(b).

14    *Plaintiff's Proof of Defamation*

15    A Plaintiff claiming defamation of any sort must establish four elements: (1) falsity, (2)

16 an unprivileged communication, (3) fault and (4) damages.  Mohr v. Grant, 153 Wn.2d 812, 822

17 (2005).  The Court examines Plaintiff's proof on each of these elements under the "clear and

18 convincing" standard.

19    (1) Falsity

20    Statements of opinion are generally held not to be "provably false" and thereby entitled to

21 First Amendment protection.  See Corbally v. Kennewick Sch. Dist., 94 Wn. App. 736, 741

22 (1999); Robel v. Roundup Corp., 148 Wn.2d 35, 55 (2002).  Plaintiff points out that a statement

23

24

1  of opinion implying existence of facts which (if communicated in a direct statement) would be

2  defamatory is itself defamatory.  Henderson v. Pennwalt Corp., 41 Wn. App. 547, 557 (1985).

3      Plaintiff appears to confine this argument to Defendants' statements after Plaintiff was

4  adjudged fit for duty in July 2009.  Response, p. 13.  Certainly prior to that date Defendants'

5  concerns regarding Plaintiff's instability and volatility and their opinions concerning the

6  impropriety of some of his actions in the workplace were in fact validated by the Department's

7  actions (misconduct citation, paid administrative leave pending a fitness evaluation, transfer out

8  of paramedic duties) and Plaintiff's own behavior.

9      Both Plaintiff's complaint and his responsive pleadings have been noteworthy for their

10 failure to identify with specificity any statements to SFD superiors, co-workers or investigators

11 which are "provably false."[4]  His response to Defendants' motion refers to "inaccuracy, error, []

12 false statement" (Id., p. 5) and "baseless allegations" (Id., p. 7), but (with the exception of his "fit

13 for duty" evaluation; see infra) produces nothing by way of "clear and convincing evidence" of

14 the falsity of which he complains.  Indeed, at one point Plaintiff's briefing asserts that "[i]t would

15 be pointless, and consume far too much of this response to detail every inaccuracy…" (Id., p. 5),

16 but in fact that is exactly what was required of Plaintiff.  The absence of such details leaves him

17 without clear and convincing evidence of provable falsehood, the cornerstone of his claims,

18 regarding Defendants' statements within the Department.

19

20

21 _____

22   [4] Plaintiff does refer at one point to a piece of "folklore" contained in statements by Defendants (a story he
   is alleged to have related about an incident where he let the air out of someone's tires in retaliation for taking a
23 parking space) which he denies (Response, p. 7).  Perhaps he intends this as proof of the falsity of the allegation, but
   his denial is rendered less than clear and convincing by the report of the independent investigator hired by SFD in
   the wake of Defendant Simmons's "Urgent Safety Complaint," which contains a finding that "Castello told this
24 story more than once."  Simmons Decl., Ex. K, p. 5.

Such claims of falsehood as he does make are directed at those portions of Defendants' speech which were broadcast as part of the KOMO News story in the spring of 2010.  The Court has reviewed those statements and reproduces them here in their entirety:

Defendant Shea:
- "I honestly did not know what the hell was going on."
- "It felt to me like anything was possible and he would have the potential to harm anyone."
- "It's scary, what the hell is going to happen when he comes back?"

Defendant Simmons:
- "He had no boundaries and that's what I kept telling the fire chief."
- "And [Deputy Chief Duggins'] response to me was, 'Chief Dean doesn't want to antagonize the union during the mayor's election bid because he sees it as a thousand votes.'"

Simmons Decl., Ex. M.

Plaintiff's position that these statements are "provably false" rests on two premises: (1) that this speech represents "statements of fact" that he was unfit for duty (Response, p. 13) and (2) that his July 2009 "fit for duty" evaluation "rendered [all of the statements to the effect that Castello presented a risk of harm] provably false.[5]  Response, p. 13.

As a preliminary matter, the Court questions whether these statements – which never identified Plaintiff by name and were part of a broadcast which never named the Plaintiff – can form the basis for a claim of defamation.  Plaintiff presented no legal authority for the proposition that the publication of speech which does not identify its subject can satisfy the legal definition of defamation.

Turning to the merits of Plaintiff's proof, the Court finds that Defendant Shea's statement that "I honestly did not know what the hell was going on" was presented in the context of a

_____

[5] To the extent that Plaintiff argues that his "fit for duty" evaluation <u>retroactively</u> renders any statements of Defendants regarding risk of harm prior to July 2009 "provably false," the Court rejects this as clear and convincing evidence of this element of his claim.  As previously stated, the disciplinary actions of the Department regarding Plaintiff and the 9-1-1 call made in response to his unauthorized appearance at the fire station lend weight to Defendants' concerns and undermine any attempt to characterize them as "provably false."

1  comment in the news story that Chief Dean was not responsive to concerns that "trouble [was]

2  brewing within the department" (Simmons Decl., Ex. M) and cannot reasonably be interpreted as

3  speech concerning Plaintiff.  Shea's observation that "[i]t felt to me like anything was possible

4  and he would have the potential to harm anyone" was (1) a description of her state of mind at a

5  prior time (before Plaintiff was adjudged fit for duty) and (2) is "pure opinion" which speaks to a

6  feeling that Shea had and does not imply the existence of any defamatory facts.  Similarly, her

7  statement of present concern ("It's scary…") also expresses nothing more than a fearful state of

8  mind and an opinion that "he" represented a potential threat.

9       Defendant Simmons's quoted comments within the story cannot form the basis for

10  Plaintiff's defamation claim.  Her statement that "[h]e had no boundaries" is an expression of

11  opinion (an opinion of a <u>prior</u> state of affairs – Simmons did not say "he <u>has</u> no boundaries"),

12  and not one that implied the existence of defamatory facts (the facts which were implied –

13  Simmons's prior experiences with Plaintiff – formed the basis for a disciplinary action against

14  Plaintiff which was upheld on appeal).  Her other comment regarding Deputy Chief Duggins's

15  response about Chief Dean has nothing whatsoever to do with Plaintiff and clearly cannot be

16  evidence of his defamation claims.

17       In addition to rejecting Plaintiff's argument that any of Defendants' statements in the

18  KOMO News broadcast constituted "statements of fact" that Plaintiff was unfit for duty, the

19  Court is also not persuaded that Plaintiff's July 2009 "fit for duty" evaluation renders

20  Defendants' opinions regarding the risk of harm represent by Plaintiff provably false and thus

21  actionable as defamation.  The Court considers it highly significant that there is no mention in

22  the psychiatrist's report which determined Plaintiff's fitness for duty of any of the details which

23

24

ORDER ON SPECIAL MOTION TO STRIKE
PURSUANT TO WASHINGTON ANTI-SLAPP
ACT & FRCP 12(C) MOTION TO DISMISS- 14

1    formed the basis for the disciplinary actions against him.  The report reflects that the following

2    information was provided to the psychiatrist prior to making his assessment:

> Mr. Castello indicates that indeed over the past several years he has been involved in a
> variety of disputes with the department, which include what appear to be some whistle
> blower type complaints, and he also indicates he has been charged with harassment. *We
> did not go into high detail on these issues since my task is fairly circumscribed to that of
> performing a psychiatric evaluation.  No personnel files were provided.*

6    Luhn Decl., Ex. 3, pp. 1-2 (emphasis supplied).  Since the report did not address any of the

7    incidents or concerns which lead to the disciplinary actions (including the referral to a "fit for

8    duty" evaluation) of which Defendants' statements formed a part, it cannot be said as a matter of

9    law that the evaluation renders any of those statements "provably false."

10          The Court finds that Plaintiff has not established the probability of proving this element

11   of his defamation claim by clear and convincing evidence.

12                        (2)  Unprivileged communication

13          Defendants present argument that their statements qualify for protection under a number

14   of privileges.  First is the absolute privilege accorded statements made in the context of a quasi-

15   judicial proceeding.   This privilege applies to statements made during the investigative phase of

16   such proceeding and in "situations in which authorities have the power to discipline."  Story v.

17   Shelter Bay Co., 52 Wn. App. 334, 338-41 (1988) (applying the privilege to unsolicited

18   complaints to governmental agencies).  The Court finds that the SFD investigations and

19   disciplinary actions, with their accompanying rights of appeal and judicial review, constitute

20   "quasi-judicial proceedings."

21          Also entitled to privilege status are communications to a public officer who is authorized

22   or privileged to act on the matter communicated on.  Gilman v. MacDonald, 74 Wn. App. 733,

23

24

1  738 (1994).  Defendants' statements to their superiors within the Department (and to the

2  investigators delegated by those superiors) fall within this category.

3        Furthermore, the original Anti-SLAPP statute creates absolute immunity for

4        A person who communicates a complaint or information to any branch or agency of
federal, state or local government… regarding any matter reasonably of concern to that

5        agency or organization.

6  RCW 4.24.510.  For all the reasons cited in the analysis of the Anti-SLAPP statutes *supra*, the

7  Court finds that Defendants were persons communicating information to an agency of local

8  government concerning a matter reasonably of concern to that agency.

9        Plaintiff argues, based upon a Massachusetts state court case, that this Anti-SLAPP

10  statute applies only to parties petitioning the government "in their status as citizens," (Kobrin v.

11  Gastfriend, 443 Mass. 327, 332 (2005)) and therefore its protections do not extend to

12  governmental employees expressing concerns about their conditions of employment.  This case

13  is factually inapposite.  The defendant in Kobrin was an investigator hired by a government

14  agency whose actionable statements were made in that capacity, while here even Plaintiff

15  concedes that Defendants here were acting in their own behalf.  The case is legally inapposite:

16  there is no showing (such as the one made in Aronson) that the Massachusetts statute mirrors

17  RCW 4.24.510.  In fact, it appears that the Massachusetts statute was more narrowly tailored to

18  protect a "party's exercise of its right of petition under the constitution of the United States or of

19  the commonwealth . . ." M.G.L.A. 231 § 59H.  The Court does not find Plaintiff's Massachusetts

20  authority to be of even persuasive value.

21        Plaintiff makes no arguments concerning the applicability of the other forms of privilege

22  asserted by Defendants, and the Court finds that, in addition to the immunity provided by RCW

23  4.24.510, Defendants are protected by the privileges accorded statements made in quasi-judicial

24

1    proceedings and to public officers authorized to act on the matter communicated on.  These

2    privileges only extend to the statements made to the officers and investigators of the SFD.

3            Concerning the remainder of their statements, Defendants also invoke the conditional or

4    qualified privilege which applies to statements between persons sharing a common interest and

5    statements made on matters of public interest.  <u>Corbally</u>, 94 Wn. App. at 742; see also <u>Masserly</u>

6    <u>v. Asamera Minerals, (U.S.) Inc.</u>, 55 Wn. App. 811, 817-18 (1989).  The Court finds that the

7    "common interest" privilege applies to Defendants to the extent that any of their

8    interdepartmental communications were received by co-workers who shared their interest in

9    workplace safety and the reputation of their department.  And, having already found Defendants'

10   statements (both within the Department and to KOMO News) to touch on "matters of public

11   interest," the Court finds their statements broadcast on the local news to be entitled to a

12   privileged status as well.

13           Plaintiff does raise the defense of "abuse of privilege," arguing that Defendants are not

14   entitled to claim privilege if it can be shown that it was abused.  However, as the case Plaintiff

15   cites (<u>Bender v. City of Seattle</u>, 99 Wn.2d 582 (1983)) makes clear, abuse of privilege only

16   applies to a <u>qualified</u> privilege (<u>Id.</u> at 600), leaving Defendants' arguments of absolute immunity

17   for their departmental statements uncontested.

18           In any event, having raised the issue of abuse of privilege concerning conditional

19   immunity and acknowledged that his proof of abuse must meet a heightened "clear and

20   convincing" standard, (<u>Id.</u> at 601), Plaintiff then abandons his proof with the observation that

21   "we are not yet at that point."  Response, p. 14.  On the contrary, this case is precisely at that

22   juncture where it is mandatory for Plaintiff to come forward with clear and convincing evidence

23

24

1   of every element of his claim.  Instead, Plaintiff rests on the citation of an inapposite case[6] and

2   on conclusory labels such as "false statements," and "allegations of provably false misconduct

3   and/or malicious expressions of opinion."  Response, p. 14.  This is no substitute for the proof

4   which the Anti-SLAPP statute demands.  The Court finds that Plaintiff has failed to establish by

5   clear and convincing evidence the probability of proving that Defendants' communications were

6   unprivileged.

7           (3) <u>Fault</u>

8           If Plaintiff were a private party suing for defamation, the degree of fault he would be

9   required to establish is that of negligence; if Plaintiff is a public figure or official, the proof of

10  fault requires evidence of actual malice.  <u>Corbally</u>, 94 Wn. App.. at 741.  Plaintiff appears to

11  maintain that he is a private individual for purposes of this lawsuit; the case law indicates

12  otherwise.  "[Plaintiff's] conduct was that of a public official because it involved the manner in

13  which he performed his [ ] duties pursuant to a public contract."  <u>Id.</u>  At oral argument, Plaintiff

14  cited <u>Corey v. Pierce County</u>, a defamation case brought by a county prosecuting attorney

15  against her employer; the Washington Court of Appeals held in that case that "as a public figure,

16  Corey must prove that the Defendant made the defamatory statements with actual malice."  154

17  Wn. App. at 762.

18          As a paramedic/firefighter under public contract to the City of Seattle, Plaintiff is in an

19  identical situation to the teacher in <u>Corbally</u> and the prosecutor in <u>Corey</u>.  The Court finds that he

20  is a public official for purposes of his defamation claim and thus required to present clear and

21  convincing evidence of actual malice on the part of Defendants.  It goes without saying that,

22  _____

23       [6] <u>Valdez-Zontek v. Eastmont Sch. Dist.</u>, 154 Wn. App. 147 (2010) concerned (1) the dissemination of
     dmittedly false information which (2) lost its claim to privilege when it was communicated to numerous individuals

24  outside "the agency or organization" (<u>Id.</u>. at 167), elements which have not been established in this case.

having characterized himself as a private person in this litigation, Plaintiff presented no evidence of actual malice by Defendants. Indeed, his proof of negligence is similarly non-existent – his responsive pleadings merely observe that "negligence is established by a preponderance of the evidence." Response, p. 12 (citation omitted).

The Court finds that Plaintiff has failed to present clear and convincing evidence of the probability of proving the fault element of his defamation claims.

(4) Damages

Plaintiff's pleading does not even address the issue of damages, much less provide clear and convincing evidence of the probability of proving them. There are allegations of damages in his complaint (§XV, ¶¶ 15.1-15.3), but the Anti-SLAPP statute is unequivocal in its requirement that Plaintiff bears the burden of establishing his claim by clear and convincing evidence once Defendants have met their burden on a special motion to strike. The Court finds that Plaintiff has failed to provide the requisite proof of damages.

To summarize: the Court finds, pursuant to RCW 4.24.525, that Defendants have established by a preponderance of the evidence that the statements at issue in this litigation were made in the course of actions involving public participation and petition. The Court further finds that Plaintiff has not satisfied his burden of proving, by clear and convincing evidence, the likelihood of prevailing on his defamation claims. On that basis, the Court grants Defendants' special motion to strike Plaintiff's defamation claims.

*Attorneys' fees and penalties*

RCW 4.25.525(6) provides that "[t]he court *shall* award to a moving party who prevails, in part or in whole, on a special motion to strike" (1) the costs of litigation and any reasonable

ORDER ON SPECIAL MOTION TO STRIKE
PURSUANT TO WASHINGTON ANTI-SLAPP
ACT & FRCP 12(C) MOTION TO DISMISS- 19

1   attorneys' fees incurred in connection with the motion and (2) $10,000 above and beyond fees

2   and costs.  (Emphasis supplied.)

3          The Court orders counsel for Defendants to submit, within 7 days of this order, requests

4   for the costs and reasonable attorneys' fees associated with this motion, accompanied by the

5   appropriate supporting declarations and exhibits.  Plaintiff will have 7 days thereafter to submit

6   any objections to those requests.

7          The Court further orders that Plaintiff shall pay Defendants Shea and Simmons $10,000

8   each as required by the Anti-SLAPP statute.  The Court is satisfied that the language of the

9   statute (which calls for the court to award "a moving party" the statutory damages) requires the

10   assessment of the penalty as to each defendant.  The Court also notes that this assessment is

11   supported by a similar award ordered by Judge Zilly of this district in <u>Eklund v. City of Seattle</u>,

12   No. C06-181TSZ, 2009 WL 1884402, at *3 (W.D. Wash. June 30, 2009).

13          *Motion to strike*

14          Plaintiff moves in his response to "strike or disregard all incompetent evidence submitted

15   with defendants' motion," followed by a list of exhibits described as "unsworn statements" and

16   "non-binding findings."  Response, pp. 7-8.  This request is unsupported by any statutory or legal

17   authority and, without knowing the legal basis upon which Plaintiff makes his request, the Court

18   denies it.

19

20   <u>FRCP 12(c)</u>

21          The Court analyzes an FRCP 12(c) motion for judgment on the pleadings utilizing the

22   same standard as a motion to dismiss for failure to state a claim upon which relief can be granted

23   (FRCP 12(b)(6)).  <u>McGlinchy v. Shull Chem. Co.</u>, 845 F.2d 802, 810 (9th Cir. 1988).  A Plaintiff

24

1  must allege sufficient facts to state a claim to relief that is plausible on its face.  Bell Atlantic

2  Corp. v. Twombly, 550 U.S. 544, 570 (2007).

3        Defendants seek dismissal of Plaintiff's claims of harassment, defamation by implication

4  and false light on the grounds that these causes of actions are not recognized in the state of

5  Washington.  The attack on Plaintiff's harassment claim is well-founded – the Complaint cites

6  no statute, regulation or other legal authority for a cause of action for "harassment."  Washington

7  law recognizes no tort of general harassment, only a tort of "malicious harassment"

8  (RCW 9A.36.080-.083) which is related to felony hate crimes and which requires allegations of

9  bodily injury (or the threat thereof) that are totally missing from this Complaint.  Plaintiff's

10  harassment cause of action fails to state a claim for which relief can be granted.[7]   Since the

11  claim is a non-existent tort in the state of Washington and amendment of the complaint would

12  thus be futile, the Court dismisses the civil harassment claim with prejudice.

13        Defendants' claims that the torts of defamation by implication and false light are non-

14  existent in Washington (Motion, pp. 19-20) do not appear to be well-founded.  In fact, Plaintiff

15  produced at oral argument a recent Washington Court of Appeals decision which clearly

16  recognizes the existence of both of these torts.  Corey v. Pierce County, 154 Wn. App. 752, 761-

17  62 (2010).  This represents something of a hollow victory for Plaintiff.

18        Because of the potential chilling effect on the exercise of First Amendment rights of free

19  speech, allegations of defamation require a heightened level of specificity – a pleading of

20  defamation will not be found adequate absent "the precise statements alleged to be defamatory,

21  who made them and when."  Flowers v. Carville, 310 F.3d 1118, 1130 (9th Cir. 2002).  This

22  Court has previously dismissed similar claims because a Plaintiff failed to identify the specific

23

24     [7]  The Court also notes that Plaintiff made no responsive argument in his briefing or at the hearing concerning this aspect of Defendants' motion.

1   statements alleged to be false.  Harris v. City of Seattle, 315 F. Supp. 2d 1112, 1123 (W.D.Wash.

2   2004).

3          Plaintiffs' claims fail to adequately specify the allegedly defamatory statements, who

4   made them and when.  Rather than identify what exactly was said, by whom and when, the

5   Complaint rests on assertions of "false complaints" (Complaint ¶ 4.7); "numerous, repeated and

6   false allegations" (Id., ¶ 10) and claims that Defendants' "statements to reporters, investigators,

7   and others" were "false."  Id., ¶ 11.2.  There is not a single specific statement which Plaintiff

8   cites as false to be found anywhere in the document.   These inadequacies affect not only

9   Plaintiff's pleading of simple defamation, but his related claims of defamation by implication

10  and false light.

11         In the interests of a thorough analysis of Defendants' motion and the legal issues it

12  presents, the Court has examined Plaintiff's defamation claims through the lens of FRCP 12(c).

13  Plaintiff requests leave of the Court to amend his Complaint "to incorporate additional, more

14  specific statements set forth in this response."  Response, p. 2.   Were there no other motion than

15  a 12(c) motion for judgment on the pleadings, the Court would customarily permit the Plaintiff

16  an opportunity to amend absent any proof that such amendment would be futile.

17         In this case, however, the Court finds that the FRCP 12(c) motion to dismiss is

18  superseded by the dictates of the Anti-SLAPP statute's special motion to strike.  In effect,

19  granting Defendants' motion to strike the defamation claims under RCW 4.24.525 has rendered

20  futile any further amendment of Plaintiff's complaint in this regard.

21  **Conclusion**

22         Pursuant to RCW 4.24.525, Defendants have established by a preponderance of the

23  evidence that the statements at issue in this litigation were made in the course of actions

24

1  involving public participation and petition.  Plaintiff has not satisfied his burden of proving, by

2  clear and convincing evidence, the likelihood of prevailing on his defamation claims.  On that

3  basis, the Court GRANTS  Defendants' special motion to strike Plaintiff's defamation claims,

4  and orders that Plaintiff pay Defendants' costs and reasonable attorneys' fees and $10,000 each

5  to Defendants Shea and Simmons.

6        Defendants' FRCP 12(c) motion for judgment on the pleadings is GRANTED as to

7  Plaintiff's cause of action for civil harassment, which is DISMISSED with prejudice.  Plaintiff's

8  motion to dismiss his claim for wrongful interference with a business expectancy is GRANTED.

9  The FRCP 12(c) motion for judgment on the pleadings concerning the defamation claims is also

10 granted; based on the granting of Defendants' motion to strike, the Court finds that further

11 amendment of the defamation claims in the Complaint would be futile.

12

13       The clerk is ordered to provide copies of this order to all counsel.

14       Dated: November 22, 2010.

15

16

17

        Marsha J. Pechman
18      United States District Judge

19

20

21

22

23

24

ORDER ON SPECIAL MOTION TO STRIKE
PURSUANT TO WASHINGTON ANTI-SLAPP
ACT & FRCP 12(C) MOTION TO DISMISS- 23